UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA ISAYEVA, | No. 2:13-CV-02015-KJM-KJN |
| Plaintiff, | |
| v. | ORDER |
| COUNTY OF SACRAMENTO, et al., | |
| Defendants. | |

        The County of Sacramento and City of Rancho Cordova (collectively "defendants") move to dismiss Diana Isayeva's ("plaintiff") fourth through seventh claims. Defs.' Mot. to Dismiss ("MTD") at 1–3, ECF No. 7-1.  The court heard argument on January 31, 2014, with Peter Goldstein appearing for plaintiff and Robert Chalfant appearing for defendants.  For the reasons below, the motion is DENIED.

I.        BACKGROUND

        On February 18, 2013, the family of Paul Tereschenko ("decedent") called 9-1-1 and reported that he was "acting strangely."  Compl. ¶ 17, ECF No. 1.  When law enforcement arrived, decedent's brother warned the officers that due to decedent's unusual behavior, "they should have more deputies go with them into the room where [decedent] was located . . . ."  *Id.* Ignoring the advice, the deputies "proceeded into [the] closed room," and after approximately

1

five minutes, shot and killed decedent. *Id.* ¶¶ 18–19. As pleaded, decedent "was unarmed and posed no imminent threat of death or serious physical injury" when he was shot. *Id.* ¶ 20.

Plaintiff, decedent's widow, filed suit on September 27, 2013. *Id.* ¶¶ 2–3. She brings the action in both her individual and representative capacities, *id.* ¶ 3, and names as defendants the County and City; Does 1 to 5, the officers involved in the shooting; and Does 6 to 10, "managerial, supervisorial, and policymaking employees" of the County and City, *id.* ¶¶ 6–11.[1] Plaintiff alleges that all Doe defendants "were duly authorized employees and agents of the [County] and/or [City], who were acting within the course and scope of their respective duties . . . with the complete authority and ratification of their principal . . . ." *Id.* ¶ 7. As "duly appointed officers and/or employees or agents," the Doe defendants were "subject to the oversight and supervision" of the County or City, *id.* ¶ 8, who themselves owed a "legal duty to oversee and supervise . . . hiring, conduct and employment," *id.* ¶ 10.

Although the complaint alleges seven claims in total, plaintiff maintains only four against the moving defendants: (1) the fourth claim for municipal liability under 42 U.S.C. § 1983 for unconstitutional custom, practice or policy; (2) the fifth claim for false arrest or imprisonment; (3) the sixth claim for battery; and (4) the seventh claim for negligence. *Id.* ¶¶ 54–83. Additionally, plaintiff names Does 1 through 5 as defendants on the false arrest or imprisonment, battery and negligence claims, and Does 6 through 10 as defendants on the

/////

/////

/////

---

[1] Doe defendants are properly named "where the identity of [the] alleged defendants will not be known prior to the filing of a complaint." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). However, such defendants will be dismissed where "'it is clear that discovery would not uncover the[ir] identities, or that the complaint would be dismissed on other grounds.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie*, 629 F.2d at 642). Additionally, the court must dismiss defendants, including Doe defendants, who have not been served within 120 days of the filing of the complaint, unless plaintiff shows good cause. FED. R. CIV. P. 4(m); s*ee also West v. Fed. Bureau of Prisons*, No. 1:09-CV-01277-LJO-GBC (PC), 2012 WL 893779, at *4 (E.D. Cal. Mar. 15, 2012); *Snowden v. Prada*, No. CV 12-1466 DSF(JC), 2013 WL 4804739, at *1 n.1 (C.D. Cal. Sept. 9, 2013).

municipal liability and negligence claims. *Id.* ¶¶ 55, 66, 73, 79, 81–82. These are the only claims and defendants at issue in the instant motion.[2] MTD at 3.

## II.         STANDARD

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." FED. R. CIV. P. 12(b)(6). Dismissal is proper where "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted). Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), it "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]," "'labels and conclusions' [and] . . . 'formulaic recitation[s] of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and courts "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party," *Usher v. City of L.A.,* 828 F.2d 556, 561 (9th Cir. 1987) (citation omitted). This rule does not, however, apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478

---

[2] Plaintiff's remaining claims allege unreasonable search and seizure and use of excessive force in violation of the Fourth and Fourteenth Amendments, as well as violation of the Due Process Clause. *Id.* ¶¶ 24–53. These claims are maintained against only Does 1 through 5, identified as "unknown deputies . . . and/or police officers" employed by the County and City respectively. *Id.* ¶ 6.

U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, or to "allegations that contradict matters properly subject to judicial notice," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

III.     ANALYSIS

   A.  Standing

Plaintiff originally did not file the declaration required under California Code of Civil Procedure section 377.32 and, therefore, appeared to lack standing to maintain the suit. Order at 3–4, ECF No. 19. As directed by the court, plaintiff has since filed an amended declaration, Am. Isayeva Decl. ¶¶ 1–9, ECF No. 20, that complies with the statute. The court finds plaintiff has standing to sue.

   B.  Fourth Claim: Municipal Liability Under § 1983

Incorporating the general and factual allegations already described, plaintiff makes the following specific allegations, quoted at length, regarding the claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 660 (1978):

> 55. Defendants [Does] 5–10 [sic] deprived Plaintiffs [sic] and [decedent] of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public . . . and of Plaintiffs [sic] and [decedent], and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy and practice of:
>
> > (a) Employing and retaining as police officers and other personnel, including . . . [Does] 1-5, who . . . [Does] 6-10, at all times material . . . knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written [County] and/or [City]'s policies, including the use of excessive and deadly force;
>
> > (b) [I]nadequately supervising, training, controlling, assigning, and disciplining [County] and/or [City] Police Officers, and other personnel, including . . . [Does] 1-5, who Defendants [County] and /or [City] knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits,

including the propensity for violence and the use of excessive force, including deadly force;

(c) [M]aintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by . . . [Does] 1-5, who are Police Officers of [County] and/or [City];

(d) [F]ailing to discipline [County] and/or [City] Police Officers' conduct, including but not limited to, unlawful detention and excessive force, including deadly force;

(e) [R]atifying the intentional misconduct of . . . [Does] 1-5, who are Police Officers of [County] and/or [City];

(f) [H]aving and maintaining an unconstitutional policy, custom and practice of detaining and arresting individuals without probable cause or reasonable suspicion, and using excessive force, including deadly force, which also is demonstrated by inadequate training regarding those subjects. The policies, customs and practice of [Does] 6-10, were done with a deliberate indifference to individuals' safety and rights;

(g) [F]ailing to properly investigate claims of unlawful detention and excessive force by [County] and/or [City] Police Officers;

(h) [F]ailing to institute appropriate policies regarding constitutional procedures and practices for use of force, including the use of less than lethal ammunitions, use of tasers and firearms;

(i) [F]ailing to institute a policy prohibiting the continuous use of the taser and less than lethal ammunitions;

(j) [U]sing excessive force against persons, condoning the use of excessive force, and conspiring to cover-up civil rights violations; and

(k) [T]otally inadequate training of its officers and other [County] and/or [City] employees, including . . . [Does] 1-5, on the aforementioned issues . . . despite clear need . . .

(l) [T]otally inadequate training of its officers and other [County] and/or [City] employees, including . . . [Does] 1-5, on the aforementioned, including dealing with mentally ill individuals, despite clear need.

56. By reason of the aforementioned policies and practices of . . . [Does] 6-10, [decedent] was severely injured and subjected to pain and suffering and lost his life.

> 57. [Does] 6-10, together with various other officials . . . had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge . . . these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of [decedent], Plaintiffs [sic], and other individuals similarly situated.
>
> 58. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, . . . [Does] 6-10, acted with an intentional, reckless and callous disregard for the life of [decedent], and [decedent]'s and Plaintiff's constitutional rights. . . . [Does] 6-10, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.
>
> Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by . . . [Does] 6-10, were affirmatively linked to and were a significantly influential force behind the injuries of [decedent] and Plaintiffs [sic].

Compl. ¶¶ 55–59. Defendants argue that despite its length, plaintiff's pleading is fatally devoid of facts and properly dismissed. MTD at 3–5. Plaintiff insists she has adequately pleaded facts supporting each element of the claim, including twelve unconstitutional policies. Pl.'s Opp'n to MTD ("Opp'n") at 5–7, ECF No. 10.

Section 1983 provides that "[e]very person who, under color of [law] . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Under this section, municipalities and other local governments are considered "persons," *Monell*, 436 U.S. at 690; however, such defendants "are responsible only for their *own* illegal acts," *Connick v. Thompson*, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011) (emphasis in original) (citations and internal quotation marks omitted). "They are not vicariously liable . . . for their employees' actions." *Id.* (citations omitted).

To successfully establish *Monell* liability, a plaintiff must show "'(1) that [he or she] possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the

6

constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). "Official . . . policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359 (citations omitted).

"In limited circumstances, a government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy . . . ." *Id.* Still, "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train" because policymakers must be "on actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights . . . ." *Id.* at 1360 (citation omitted). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [its] action," but "[a] less stringent standard for a failure-to-train claim would result in *de facto respondeat superior* liability . . . ." *Id.* (citations and internal quotation marks omitted).

"[A] custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (citations and internal quotation marks omitted). "[E]vidence of inaction—specifically failure to investigate and discipline employees in the face of widespread constitutional violations—can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality." *Id.* at 1234 n.8 (emphasis omitted).

Here, plaintiff sufficiently pleads the *Monell* claim. She alleges the violation of her Fourth and Fourteenth Amendment rights, and those of decedent, caused by specific municipal policies amounting to deliberate indifference. Compl. ¶¶ 55–59. In the complaint, plaintiff "makes detailed factual allegations that go well beyond reciting the elements of a claim of deliberate indifference," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), specifically alleging various policies of inaction and inadequate oversight, leading to violations

of the constitutional rights of plaintiff and decedent, other "persons of their class, situation and comparable position" and "the public in general," of which defendants "knew or reasonably should have known . . . ." Compl. ¶¶ 55–59. Further, plaintiff alleges that "[d]espite having knowledge as stated above[,] . . . defendants condoned, tolerated and through actions and inactions thereby ratified such policies." *Id.* ¶ 57.

The fourth claim may proceed.

### C. Fifth Claim: False Arrest or Imprisonment

Plaintiff's fifth claim states:

> 66. [Does] 1-5, while working as Police Officers for the [County] and/or [City], and acting within the course and scope of their duties, intentionally deprived [decedent] of his freedom of movement by use of force, threats of force, menace, fraud, deceit, and unreasonable duress. . . . [Does] 1-5 also detained [decedent] without reasonable suspicion. There was an attempt to arrest [decedent] without probable cause.
>
> 67. Decedent did not knowingly or voluntarily consent.

Compl. ¶¶ 66–67. The claim also incorporates foundational factual allegations, namely that "[unknown deputies] proceeded into a closed room of the home to attempt to talk [decedent] into going with them for mental health treatment," *id.* ¶ 18, and that "[a]fter being in the room with [decedent] for approximately five (5) minutes, [unknown deputies] shot and killed [decedent]," *id.* ¶ 19. Defendants argue this claim must be dismissed because "no facts pled . . . raise the inference that deputies attempted to arrest or detain decedent." MTD at 6. Plaintiff counters that the claim is supported by sufficient facts. Opp'n at 7–8.

Plaintiff brings this claim under state law. In California, "[t]he tort of false imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time," *Hagberg v. Cal. Fed. Bank F.S.B.*, 32 Cal. 4th 350, 372–73 (2004) (alteration in original) (citation and internal quotation marks omitted), which "can be as brief as [fifteen] minutes," *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994). "[A] false arrest is merely one way in which a false imprisonment may be accomplished—the two are not separate torts." *Hagberg*, 32 Cal. 4th at 372 n.7 (citation omitted).

8

1     Plaintiff's claim here is sufficiently stated as well.  Contrary to defendants'
2  assertion, plaintiff is not required to plead that "deputies attempted to arrest or detain
3  decedent."  MTD at 6.  Rather, plaintiff's factual allegations—that "[deputies] proceeded into
4  [the] closed room [with decedent]," Compl. ¶ 18, and "intentionally deprived [him] of his
5  freedom of movement by use of force[ and] threats of force," *id.* ¶ 66—are sufficient to support
6  the inference of "nonconsensual, intentional confinement of a person . . . ."  *Hagberg*, 32 Cal.
7  4th at 372–73 (citation and internal quotation marks omitted).

8     The fifth claim may proceed.

9     D.  <u>Sixth Claim: Battery</u>

10    Defendants challenge plaintiff's sixth claim only on the grounds that she failed
11 to file the declaration required by California Code of Civil Procedure section 377.32.  In light
12 of plaintiff's now having filed the declaration, this argument is moot.

13    The sixth claim may proceed.

14    E.  <u>Seventh Claim: Negligence</u>

15    Plaintiff brings her seventh claim, again under state law, alleging that:

> 79. The actions and inactions of the Defendants were negligent and reckless . . . [in the following ways]:
>
>   (a) the failure to properly and adequately assess the need to detain, arrest and use force or deadly force against [decedent];
>
>   . . .
>
>   (c) the . . . detention, arrest, and use of force, including deadly force, against [decedent];
>
>   . . .
>
>   (e) the failure to properly train and supervise employees, both professional and non-professional . . . ;
>
>   (f) the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of [decedent];
>
>   . . .

28 /////

      (h) the . . . tactics and handling of mentally ill individuals.

Compl. ¶¶ 79–79(h). Defendants argue dismissal for failure to allege sufficient facts is warranted, MTD at 6–7, while plaintiff contends the claim, sufficiently supported, survives, Opp'n at 9–10.

    In California, the elements of negligence are: "(1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (citations omitted). "The legal duty of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) an affirmative duty where the person occupies a particular relationship to others." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal. App. 4th 1011, 1016 (1997) (alteration in original) (citation and internal quotation marks omitted).

    The claim is properly pleaded. Plaintiff's specific, factual allegations as to how defendants were negligent are sufficient to provide "fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 555. No more factual detail is needed.

    The seventh claim may proceed.

IV.  CONCLUSION

    As set forth above, the motion is DENIED.

    IT IS SO ORDERED.

DATED: May 15, 2014.

                    _____
                     UNITED STATES DISTRICT JUDGE